UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**BARRY VERNON BARNETT and CORTNEY BAUGH BARNETT,**<br><br>Debtors. | **Case No. 25-10071-357**<br><br>**Chapter 12** |
| In re:<br><br>**TRAVIS PARSON and CASEY PARSON,**<br><br>Debtors. | **Case No. 25-10188-357**<br><br>**Chapter 12** |
| In re:<br><br>**DENNIS HAYES,**<br><br>Debtor. | **Case No. 25-10218-357**<br><br>**Chapter 12** |
| In re:<br><br>**STEVEN WALKER and KEISHA WALKER,**<br><br>Debtors. | **Case No. 25-10430-357**<br><br>**Chapter 12** |

## MEMORANDUM OPINION

The United States is an unsecured or undersecured creditor in each of these Chapter 12 cases.[1] All of the Debtors are represented by the same law firm, and they have proposed plans of adjustment that are similar in structure. The United States has objected on similar grounds to each plan. This Opinion addresses three issues common to the plans in these cases.

### I.      Jurisdiction

The Court has subject-matter jurisdiction under 28 U.S.C. § 1334(b) because the issues arise under Section 1225 of the Bankruptcy Code and arise in the bankruptcy cases of the Debtors. These are core proceedings under 28 U.S.C. § 157(b)(2)(L).

### II.      Background

The plans in these cases contemplate that the Debtors will provide for their unsecured creditors in two ways.

First, each plan requires the applicable Debtors to make fixed payments, monthly or annually, to the Trustee during the three-to-five-year term of the plan. The total of these payments in a particular case is intended to equal the amount that general unsecured creditors would recover under a hypothetical liquidation of the bankruptcy estate under Chapter 7 of the Bankruptcy Code. The parties agree that *if* these payments have been calculated correctly, they satisfy the so-called best-interests-of-creditors test of Section 1225(a)(4) of the Bankruptcy Code. But, as we shall see, the parties do not agree about how the calculation should be performed.

Second, each plan includes a variable component based on the applicable Debtor's or Debtors' disposable income. The Debtors do not guarantee that any particular amount will be paid under this provision, but the plans call for them to pay all of their excess disposable income to the Trustee annually. These payments are designed to satisfy the disposable-income requirement of Section 1225(b)(1)(B), but the United States argues that they do not.

A third concept, addressed in multiple paragraphs of each plan, is important as well. The Debtors propose to treat taxes arising from the sale of property used in their farming operations, whether the sale occurs pre-petition or post-petition, as general unsecured claims

---

[1] The Internal Revenue Service is a creditor in all four cases. The Small Business Administration also is a creditor in one case. The distinctions between these agencies and their connections to the Debtors are not material to the issues discussed in this Opinion, and I will refer to them collectively as the United States or the Government.

that may be discharged upon completion of their plans. This is, in summary form, what Section 1232(a) of the Bankruptcy Code authorizes.

## III.    Analysis of the Government's Objections

As relevant here, the Government has objected to the Debtors' plans on three grounds. First, it argues that the Debtors' liquidation analyses, which are intended to demonstrate that the best-interests-of-creditors test is satisfied, do not handle the Section 1232 taxes appropriately. This appears to present a question of first impression. Second, the United States argues that the disposable-income test requires the Debtors to guarantee that particular sums will be paid to the Trustee each year; in its view, a retrospective payment based on actual results is insufficient. And third, the Government argues that it is inappropriate for the Debtors to deduct attorneys' fees and trustee fees that will be incurred during the term of the plans from their calculations of disposable income.

### A.    De-Prioritized Taxes Generally

Section 1232(a), which I summarized above, provides as follows:

Any unsecured claim of a governmental unit against the debtor or the estate that arises before the filing of the petition, or that arises after the filing of the petition and before the debtor's discharge under section 1228, as a result of the sale, transfer, exchange, or other disposition of any property used in the debtor's farming operation—

(1) shall be treated as an unsecured claim arising before the date on which the petition is filed;

(2) shall not be entitled to priority under section 507;

(3) shall be provided for under a plan; and

(4) shall be discharged in accordance with section 1228.

11 U.S.C. § 1232(a). The section derives from the former Section 1222(a)(2)(A), which Congress modified and relocated in a 2017 bill intended to overrule the Supreme Court's interpretation of the statute in *Hall v. United States*, 566 U.S. 506 (2012). *See* Additional Supplemental Appropriations for Disaster Relief Requirements Act, 2017, Pub. L. No. 115-72, § 1005, 131 Stat. 1224, 1232-33.

Taxes that are subject to the treatment provided in Section 1232(a) are commonly referred to as "de-prioritized." This "priority-stripping provision" has important benefits for

debtors. *In re DeVries*, 621 B.R. 445, 448 (B.A.P. 8th Cir. 2020). Because a debtor must pay priority claims in full under a Chapter 12 plan, but there is no such requirement for general unsecured claims, de-prioritization makes it easier for a debtor with substantial capital-gains taxes to propose a confirmable plan. *See* 11 U.S.C. § 1222(a)(2); *Hall*, 566 U.S. at 525 (Breyer, J., dissenting). Relatedly, priority tax claims generally are not subject to discharge. *See id.* §§ 1228(a)(2), 523(a)(1)(A). Section 1232(a)(4) expressly subjects de-prioritized claims to the Chapter 12 discharge, which can be a significant benefit to a debtor in reorganizing or liquidating a farm operation.

### B.     Section 1232(b) and the Best-Interests Test

Like the other reorganization chapters of the Bankruptcy Code, Chapter 12 permits creditors to object to the confirmation of a plan because they believe they would recover more in a Chapter 7 liquidation. The best-interests-of-creditors test requires a court to evaluate whether "property to be distributed on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7" of the Bankruptcy Code on the effective date of the plan. 11 U.S.C. § 1225(a)(4). *See also In re Hopwood*, 124 B.R. 82, 85 (E.D. Mo. 1991) (comparison is made as of plan effective date, not petition date). Because de-prioritization is available only in Chapter 12, the comparison is not necessarily straightforward.

To illustrate the issues, let us consider a hypothetical liquidation of a hypothetical debtor's estate under Chapter 7. After the trustee has liquidated or abandoned assets, paid secured claims, and addressed exemptions, our hypothetical estate contains $500,000 in cash. The unsatisfied claims against the estate consist of $100,000 in professional fees, $200,000 in capital-gains taxes that would qualify for de-prioritization under Section 1232(a), and $600,000 in general unsecured claims. Under the ordinary Chapter 7 distribution rules, the trustee would fully satisfy the professional fees, which have administrative-expense priority under Section 507(a)(2), and the taxes, which have priority under Section 507(a)(8)(A). *See* 11 U.S.C. § 726(a)(1) (requiring trustee to pay priority claims first). That would leave $200,000 to be distributed to the general unsecured creditors, which would thus recover one-third of their claims *pro rata*.

By contrast, in a Chapter 12 case, only the professional fees would have priority. After they were satisfied, the remaining $400,000 in the estate would be prorated among $800,000 of general unsecured creditors—now consisting of the de-prioritized taxes and the garden-variety unsecured creditors—which would thus recover one-half of their claims.

The general pattern in this hypothetical holds regardless of the actual numbers.[2] When taxes are de-prioritized in Chapter 12, a taxing authority recovers less than it would in a comparable Chapter 7 case, and other general unsecured creditors recover more than they would in that Chapter 7 case. This dynamic presents two problems under the best-interests test: a tax creditor could use the test to defeat confirmation of any Chapter 12 plan by pointing to its higher recovery as a priority creditor in Chapter 7, and the test would have no teeth at all when invoked by another unsecured creditor.

Congress addressed at least the first of these problems by enacting Section 1232(b). It states as follows:

> For purposes of applying sections 1225(a)(4) [and certain others] to a claim described in subsection (a) of this section, the amount that would be paid on such claim if the estate of the debtor were liquidated in a case under chapter 7 of this title shall be the amount that would be paid by the estate in a chapter 7 case if the claim were an unsecured claim arising before the date on which the petition was filed and were not entitled to priority under section 507.

11 U.S.C. § 1232(b). This subsection originated with the 2017 legislation; it did not have a counterpart in the former Section 1222(a)(2)(A).

It is clear, and the parties do not dispute, that Section 1232(b) removes the veto power over plan confirmation that a taxing authority would have in its absence. It accomplishes this by stating that when a court is "applying section[] 1225(a)(4)" to a de-prioritized tax claim in Chapter 12, the relevant comparison is to a hypothetically de-prioritized tax claim in a hypothetical Chapter 7 liquidation. The tax creditor may still have a valid best-interests objection to confirmation if something else about the Chapter 12 case inappropriately reduces the recoveries of creditors, but the mere fact of de-prioritization does not give the tax creditor a trump card.

But the parties disagree about what Section 1232(b) means for other unsecured creditors. The Debtors advance a narrow interpretation, arguing that a court *applies* Section 1225(a)(4) to a tax claim only when the court evaluates what the tax creditor will recover. When any other claim is under scrutiny, the Debtors argue, the hypothetical liquidation used for the comparison should reflect the usual treatment of priority tax claims in Chapter 7. Thus,

---

[2] For purposes of this analysis, I disregard the rare solvent debtor (which can pay all unsecured creditors are in full regardless of how they are prioritized) and the hopefully rare administratively insolvent estate (which cannot distribute anything to general unsecured creditors).

the Debtors' interpretation of Section 1232(b) would mean that the debtor in our example above would need to pay an ordinary general unsecured creditor only one-third of its claim under a Chapter 12 plan, because that is all that creditor would recover in a Chapter 7 liquidation in which the normal priorities applied. If we translate the result into dollars, our debtor would be required to pay the tax creditor $100,000 on account of its $200,000 claim, because that creditor would recover one-half as a de-prioritized creditor in a Chapter 7 liquidation, and $200,000 to the other general unsecured creditors on account of their $600,000 in claims, because they would recover one-third in a liquidation in which tax claims are given their normal priority. In short, the Debtors contend that different liquidation analyses may permit different *pro rata* recoveries.

The Government argues, in effect, that there can be only one liquidation analysis for purposes of the best-interests test, and tax claims that are de-prioritized in Chapter 12 must be treated as general unsecured claims for purposes of the hypothetical liquidation. In the words of the statute, it contends that a court *applies* Section 1225(a)(4) to a tax claim not only when the court considers what the tax creditor would recover in Chapter 7, but also when the court considers what any other creditor would recover. This is so because the court cannot determine what a general unsecured creditor would receive in a hypothetical Chapter 7 liquidation without knowing whether the tax creditor would have priority over or would be *pari passu* with the general unsecured creditor. If we use the Government's interpretation of Section 1232(b) to determine creditors' entitlements in our example above, the debtor would be required to pay a general unsecured creditor one-half of its claim under a plan, because that is what the creditor would recover in a Chapter 7 liquidation in which the tax claims were de-prioritized. In dollar terms, the debtor would be required to distribute $400,000 among the $800,000 in general unsecured creditors.

To determine what it means to *apply* Section 1225(a)(4) to a de-prioritized tax claim, I must consider the text, context, and purpose of Section 1232(b). *See, e.g., Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 80 (2011); *In re Woodward*, 537 B.R. 894, 899 (B.A.P. 8th Cir. 2015).[3]

The text alone does not resolve the question. It is plausible to say that a court *applies* the best-interests test to a tax claim only when the tax creditor invokes the test. But it also is reasonable to say that a court *applies* the best-interests test to every claim in a particular case

---

[3] In *Ransom*, the Court interpreted the word "applicable" in Section 707(b)(2)(A)(ii)(I). *See* 562 U.S. at 69. Although the words "applicable" and "applying" are related, the synonyms for "applicable" discussed in *Ransom*—relevant, fit, suitable, appropriate—provide little help here. *See id.*

whenever it considers what a hypothetical liquidation would produce. The rights of creditors are largely interdependent, and one cannot determine what a general unsecured creditor might recover without determining which claims must be paid before it. Nothing in Section 1232(b) itself establishes that either of these two interpretations is obviously correct.

The context and purpose of the statute, however, demonstrate that the Government's interpretation is the more sensible one. Three points illuminate the appropriate construction of the statute.

First, the Debtors' interpretation produces different results for tax creditors and other creditors. The disparity may vary from case to case, but in our hypothetical example, the tax creditor recovers half of its debt and others recover only one-third of theirs. Section 1222(a)(3) requires that a plan provide "the same treatment for each claim or interest within a particular class unless the holder of a particular claim or interest agrees to less favorable treatment." 11 U.S.C. § 1222(a)(3). *See generally Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 655 (2006) (noting that "the Bankruptcy Code aims, in the main, to secure equal distribution among creditors"); *Velde v. Kirsch*, 543 F.3d 469, 472 (8th Cir. 2008) (discussing "the prime policy of the Bankruptcy Act of an equal distribution of the debtor's assets among similarly situated creditors").

Second, even if a debtor places de-prioritized tax creditors and other general unsecured creditors in separate classes, Section 1222(b)(1) requires that a plan "not discriminate unfairly" against a class of unsecured creditors. 11 U.S.C. § 1222(b)(1). This statute is consistent with the general principle that "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard*, 547 U.S. at 655. No such clear authorization is present here.

Third, the Government's interpretation harmonizes the purposes of the two statutes at issue, Sections 1225(a)(4) and 1232. Section 1225(a)(4) is designed to ensure that a debtor does not employ Chapter 12, which generally is more expensive and takes longer than a Chapter 7 liquidation, to pay creditors less than they would recover in a liquidation. *See In re Bremer*, 104 B.R. 999, 1006-07 (Bankr. W.D. Mo. 1989) (noting that, "consistent with the policy considerations behind the 'best interest of creditors' and Chapter 12 in general," the purpose of the hypothetical liquidation analysis "is to ensure that creditors are receiving a 'fair deal' under the plan"). In a limited sense, the Debtors' interpretation of Section 1232(b) accomplishes that goal; as discussed above, tax creditors receive what they would receive as de-prioritized creditors in a liquidation, and other unsecured creditors receive what they would receive in a normal liquidation in which they were subordinated to tax creditors. But there is a problem. Recall that our hypothetical estate includes $500,000 to be distributed to unsecured creditors. The Debtors' interpretation of Section 1232(b) requires that creditors

receive only $400,000 ($100,000 for professionals, $100,000 for tax creditors, and $200,000 for other unsecured creditors). In effect, this interpretation permits the debtor to capture the remaining $100,000. That result is inconsistent with the purpose of the best-interests-of-creditors test. It also is not necessary to vindicate the purpose of Section 1232, to facilitate farm debtors' restructurings by reducing their tax burdens, which is fully effectuated by the de-prioritization and discharge of the tax claims it addresses, as well as the elimination of a taxing authority's veto power under the best-interests test. In other words, a debtor need not pay less in total to unsecured creditors than it would in Chapter 7 to get the full benefit of de-prioritization.[4]

For these reasons, I conclude that when a court evaluates the treatment of any creditor under Section 1225(a)(4), the relevant comparison is to a hypothetical Chapter 7 liquidation in which tax claims are de-prioritized to the same extent that they are de-prioritized in the Chapter 12 restructuring proposed in the debtor's plan.

### B.    Retrospective Calculation of Disposable Income

If the trustee or an unsecured creditor objects to confirmation of a Chapter 12 plan, the court may not approve the plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the three-year period [or longer period approved by the court], beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1225(b)(1)(B). The parties disagree about what a debtor must commit to do under Section 1225(b)(1)(B). The Government argues that a Chapter 12 debtor is subject to essentially the same requirements that apply in Chapter 13: the debtor must commit to pay particular amounts to the trustee on particular dates and must suffer the consequences if the payments are not made.[5] The Debtors contend that it is sufficient for them to turn over their actual disposable income, as determined after the end of the year, to the Trustee for distribution.

---

[4] To be sure, the absolute-priority rule does not apply in Chapter 12. *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 210 & n.9 (1988) (discussing this significant difference between Chapters 11 and 12). The problem with the Debtors' interpretation of Section 1232(b) is not that it permits a debtor to retain assets without paying creditors in full; it is that it permits a debtor to retain assets that would be available to creditors in any Chapter 7 liquidation, regardless of the rules governing the distribution of the assets among creditors.

[5] In Chapter 13, the consequences may include dismissal of the case for "material default … with respect to a term of a confirmed plan." 11 U.S.C. § 1307(c)(6). But in some circumstances, the debtor may be able to confirm an amended plan to address the shortfall.

(footnote continued)

The Government's argument that disposable income under Chapter 12 should be handled as it is in Chapter 13 has some appeal. The relevant statutes use the same term, "projected disposable income"; they impose the requirement only when the trustee or an unsecured creditor raises it; and they allow essentially the same types of expenses to be deducted in the calculation of disposable income, at least for Chapter 13 debtors with below-median incomes. *Compare* 11 U.S.C. § 1225(b) *with id.* § 1325(b). But the two statutes differ significantly in how they address gross income. The disposable-income test in Chapter 12 does not define income at all; it begins with "income which is received by the debtor." *Id.* § 1225(b)(2). But in Chapter 13, we start with "current monthly income." *Id.* § 1325(b)(2). That term is separately defined, at great length, in Section 101(10A). The finer details are irrelevant here, but it suffices to say that current monthly income is the average of the debtor's income during the six full months preceding the bankruptcy filing. *See id.* § 101(10A)(A)(i). The rigidity of the formula is lessened somewhat by the court's ability to consider changes "that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, 560 U.S. 505, 524 (2010).

The omission of "current monthly income" from the disposable-income requirement in Chapter 12 is, no doubt, an intentional decision by Congress. *See In re Arndt*, No. 17-30226, 2017 WL 5164141, at *10 (Bankr. N.D. Ohio Nov. 6, 2017) (observing that when Congress amended Chapter 13's definition of "disposable income" in 2005, it elected not to harmonize Chapter 12's definition of the term with the new definition applicable in Chapter 13). Given the volatility of commodity prices, seasonality, geopolitical events, weather, and other variables that affect farmers, projecting future income directly from past income is not a sound approach. And because it would be difficult to say that anything about a farmer's future income is known or virtually certain, the *Lanning* principle would not be of much help.

The Eighth Circuit has developed a different approach to ensure that a Chapter 12 plan captures the debtor's disposable income. In *Rowley v. Yarnall*, the court held that a Chapter 12 plan "imposes a duty upon the [debtors] to pay their actual net disposable income received during the plan period to the unsecured creditors." 22 F.3d 190, 193 (8th Cir. 1994). *See also In re Broken Bow Ranch, Inc.*, 33 F.3d 1005, 1008-09 (8th Cir. 1994) ("Creditors may also require a final disposable income determination at the end of the plan, prior to discharge," to prevent a windfall); *In re Berger*, 61 F.3d 624, 626 (8th Cir. 1995) (affirming disallowance of debtors' race-car expenses in calculation performed at completion of plan). The debtor has the burden of proof on the issue of actual disposable income. *See In re Hammrich*, 98 F.3d 388,

---

*See id.* § 1329; *In re Johnson*, 458 B.R. 745, 748-49 (B.A.P. 8th Cir. 2011) (requiring a substantial change in circumstances and a modification of the plan that correlates to the change). Chapter 12 includes comparable provisions in Sections 1208(c)(6) and 1229.

390 (8th Cir. 1996). Chapter 13, by contrast, does not require a debtor to demonstrate that plan payments have equaled the debtor's actual disposable income during the plan period.

All of the above demonstrates that Chapter-13-style provisions for the payment of the debtor's disposable income are not required in Chapter 12 plans. The plans in these cases include projections of disposable income but require the Debtors to pay their actual income, as calculated annually, into their plans. The Debtors are not required to meet their projections or to modify their plans if they fall short, but they are required to pay more if their actual results exceed their projections. Section 1225(b) does not require more.[6]

### C.    Attorneys' Fees and Trustee Fees

The Government also argues that the Debtors should not be permitted to deduct attorneys' fees and trustee fees in the calculation of their disposable income, because these fees are not reasonably necessary for the Debtors' maintenance or support or for the continuation of their business. *See* 11 U.S.C. § 1225(b)(2). I disagree.[7]

As an initial matter, it is not clear that there is a real controversy here. Attorneys' fees and trustee fees must be paid in a Chapter 12 case. If the debtor does not pay these expenses, the trustee is required to pay them before making distributions to creditors. *See* 11 U.S.C. § 1226(b). Thus, if I were to require the Debtors to increase their disposable-income payment by $13,500 (for example) because they are not permitted to deduct attorneys' fees and trustee fees, none of that $13,500 would benefit unsecured creditors such as the United States. The Trustee would simply pay the incremental funds to the attorneys and to himself, and unsecured creditors would receive exactly what they would get under the Debtors' preferred approach.

In any event, the deduction is appropriate. The Bankruptcy Code permits a debtor to make payments directly to creditors with court approval. *See* 11 U.S.C. § 1226(c); *In re Wagner*, 36 F.3d 723, 727 (8th Cir. 1994). When the court permits a direct payment, the debtor uses some of its disposable income "to make payments under the plan," as Section

---

[6] Nothing in this Opinion precludes a party in interest from objecting to confirmation of a plan because the debtor omits a source of income, inaccurately or unrealistically projects income, or proposes to deduct inappropriate expenses. It may be in the interest of all parties to identify these issues at the confirmation hearing, rather than after the debtor's books for the year are closed.

[7] This argument is categorical in nature. There is no question that the Government retains the right to argue that the deduction of a particular fee is not appropriate.

1225(b)(1)(B) requires. The debtor cannot be required to use that same income to make additional payments under the plan, so it is appropriate to subtract it as part of the calculation to determine how much the debtor must pay to the trustee for distribution to other creditors.

The same logic applies to another expense item. Each of the Debtors proposes to deduct the annual payment to the Trustee required by the best-interests-of-creditors test, discussed at length above, in their calculation of disposable income. This payment is required by the Bankruptcy Code and by the plan, but it is not, strictly speaking, necessary for maintenance or support or the preservation of a business. Nevertheless, it must be deducted if the plan and the flow of funds under it are to make any sense. I note that the United States has not objected to this deduction.

## IV.    Conclusion

For these reasons, I will adopt the Government's interpretation of Section 1232(b) and the Debtors' interpretation of Section 1225(b)(1)(B) in evaluating the proposed plans of adjustment in these cases.

Dated:  March 19, 2026
St. Louis, Missouri
cjs

Brian C. Walsh
United States Bankruptcy Judge